The Crosby Realty & Mortgage Co., Appellee, *v.*
Smith et al., Appellants.

(No. 3877—Decided March 23, 1942.)

*Messrs. Fraser, Effler, Shumaker & Winn,* for appellee.

*Mr. Ralph Emery,* for appellants.

Lloyd, J. In the action commenced by it as plaintiff in the Court of Common Pleas, The Crosby Realty & Mortgage Company sought to recover a judgment against the defendants, Ethel Duryea Smith and Carroll D. Smith, for a commission alleged to have been earned in the procurement of a purchaser for the Smith home located at 2010 Orchard road in Ottawa Hills.

The court, a jury having been waived, stated its

conclusions of fact and law, finding as its conclusion of law that the plaintiff was entitled to recover a judgment for $925. The motion of the defendants for a new trial having been overruled, the court rendered judgment in favor of the plaintiff for $925, that sum being 5 per cent of $18,500, the sale price of the Smith property.

From this judgment the defendants appeal to this court on questions of law. The assignments of error might well, it seems to the court, have stated simply that there is no evidence in the record to sustain the judgment because plaintiff was not the proximate procuring cause of the sale and that, if it were, the court erred to the prejudice of the defendants in permitting the plaintiff to introduce evidence as to the rules of the Toledo real estate board as to commissions charged by real estate brokers for their services.

Mrs. Smith was the owner of the real estate in question, Carroll Smith, her husband, having only an inchoate right of dower therein. Mrs. Smith was not called, either by plaintiff or defendants, but from the evidence it appears that for some six or seven years she and her husband had been desirous of selling their home and that Mr. Smith, assuming to act for his wife, had at one time given an exclusive listing for sale of the property to a Toledo broker, not the plaintiff, and thereafter had refused to and had not given such listing to anyone but had said to a number of brokers, including plaintiff, that the property was for sale and that a commission would be paid to any one procuring a purchaser therefor.

The plaintiff showed the property to several prospects, none of whom, however, became interested in its purchase. There is no question but that plaintiff endeavored to find a purchaser, but, at least up to October 8, 1940, had not been successful. On the morning of October 8th, Anderson, an agent of plaintiff, told its

president that he was intending to show some properties to Mrs. Rudy and asked if the president knew of any property likely to suit her, whereupon the president of plaintiff suggested that he show her the Smith property on Orchard road. Anderson telephoned Mrs. Rudy, about noon time, and without telling her whose property it was, asked her to meet him at 2010 Orchard road and also made an appointment with Mr. Smith for the afternoon of that date, without telling him to whom he desired to show the property. Mrs. Rudy drove out in her own car, stopping in front of 2010 Orchard road where she met Anderson, who had driven his own car there and had parked it nearby. Mr. Smith came from the rear of the house and Anderson said that no introduction was necessary because ''I saw they were acquainted.'' Anderson testified that when Mrs. Rudy saw Mr. Smith, she said: ''This is the property that I have been talked to about;'' that her father ''had met Mr. Smith at some dinner or luncheon the night before and the matter was called to his attention, that he wanted to sell the house * * *. She said that was the property that was mentioned to her by her father'' who had talked to her about it ''the previous day or that morning.''

To the question: ''Then you understood immediately after your arrival there that Mrs. Rudy was familiar with the property and that her father had talked to her about it the previous evening,'' Anderson answered, ''Yes.''

Mr. Smith, according to Anderson, without further comment, then showed Mrs. Rudy through the house and also showed her the garage, ''the whole yard, landscaping and everything'' and he, Anderson, accompanied them, ''three-quarters of an hour perhaps'' being thus consumed. Anderson then showed two or three other houses to Mrs. Rudy.

The testimony of Howard Crosby, president of the

plaintiff, relates only to talks with Mr. Smith as to his desire to sell the Orchard road property, his first such talk having occurred probably six years ago; to the fact that plaintiff did not have an "exclusive listing"; and to the fact that the Smith home had been shown to several possible purchasers.

Having learned that the Rudys had decided to buy the Smith property, he telephoned to Mr. Smith that "we are an interested party to the fact that we have shown Mrs. Rudy the house and naturally expect production of the commission," to which Smith replied, "You aren't going to get any commission out of that deal, that is my deal."

Mr. Carl Spitzer, father of Mrs. Rudy, testified that he had known Smith for "twenty years at least"; that he also had known Mrs. Smith for some length of time; and that on October 7, 1940, he met Mr. Smith at a noon luncheon of the Rotary Club "where he spoke to me about his house and told me it was for sale, which I already knew." Later in the afternoon Smith went to Spitzer's office, where the conversation was continued. Spitzer said to Smith: "I am not making the purchase; it is my son-in-law and daughter * * * and I told him I would see her that evening. My daughter, Mrs. James Rudy who before her marriage was Sarah Spitzer, commonly known as Sally." Mr. Spitzer discussed it with his daughter that same evening, suggesting to her "that she get in touch with Mrs. Smith and arrange to see the house herself. I told her that if it could be bought for the right price I thought it was a pretty good house for her" and that "I would help finance the purchase." Mrs. Rudy confirmed her father's testimony as to the conversation about the Smith home. She told her father that she would arrange to see the house the following day and that she had "very definitely" decided to do so. She testified that Anderson did not tell her what properties he was

planning to show her when he requested her to meet him at 2010 Orchard road and when she met him there she "asked him whose house it was" and when he said it was the Carroll Smith house she said, "Well, that was strange, I was supposed to have gone out to that house Tuesday anyway, because Mr. Smith had spoken to my father before and told me to come out and see it today." Anderson replied it was quite a coincidence coming to the house and said that "I heard you talked to Mr. Smith and this was the house I had to show today." Mr. Smith stated that he had known Mrs. Rudy since she was a child and that Mrs. Rudy when she and Anderson met him at the Orchard road house on October 8th, said, "Hello, Mr. Smith, I was talking with dad last night about this house and I said 'Yes, I talked with your father at noon time and yesterday afternoon and you were to make an appointment this morning.' "

The foregoing is the substance of all of the evidence having any probative relation to the question at issue.

In its petition, the plaintiff alleges in substance that the defendants on October 7, 1940, agreed orally to pay to it a commission of 5 per cent of the sale price if it "should locate a purchaser of said premises at a price satisfactory to the defendants" and that on October 8, 1940, it procured James A. Rudy and Sally Rudy as such purchasers. Plaintiff further alleged that the sale price of the premises was $19,500 and that it was entitled to recover 5 per cent thereof, or $975. The purchase price in fact was $18,500. The only evidence of a commission of 5 per cent being payable if plaintiff procured a purchaser of the property, was that that percentage is the commission "established by the Toledo board of realtors."

There is no evidence of a contract with the Smiths to pay as commission any fixed sum or percentage of the purchase price; and if it were an important ele-

ment to be considered by this court in arriving at its decision herein, the court would be required to say that the method of proof adopted was prejudicially erroneous.

Reverting to the questions presented by the pleadings and the evidence—Did the plaintiff "locate a purchaser for said premises?" Did its agent, Anderson, "introduce the defendants Rudy to the defendants Smith as a prospective purchaser for said premises?"

The definitive facts clearly answer "No."

The Rudys were not induced to negotiate the purchase of the Smith property through any means employed by plaintiff and in no sense can it be said that anything done by the plaintiff was the proximate procuring cause of the Rudys' purchasing or becoming interested in its purchase. The only possible contribution of plaintiff thereto was the meeting by appointment of its agent and Mrs. Rudy at the property where, by admission of the agent, he was at once told by Mrs. Rudy, when she discovered that it was the Smith property, that she already knew about and was planning on her own account to look at it pursuant to the suggestion of her father.

The judgment of the Court of Common Pleas is reversed and final judgment rendered for the defendants.

*Judgment reversed.*

Overmyer and Carpenter, JJ., concur.